UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ABX LOGISTICS (USA) INC.,

     Plaintiff,

vs.

MENLO LOGISTICS, INC., d/b/a
MENLO WORLDWIDE LOGISTICS,
and TOWER AUTOMOTIVE, LLC,

                                       Case No. 2:09-CV-12792

     Defendants,                     Honorable Victoria A. Roberts

-and-                             Magistrate Judge Mona K. Majzoub

TOWER AUTOMOTIVE, LLC,

     Cross-Plaintiff/Counter-Defendant,

vs.

MENLO LOGISTICS, INC., d/b/a MENLO
WORLDWIDE LOGISTICS,

     Cross-Defendant/Counter-Plaintiff/
     Third-Party Plaintiff

vs.

TOWER AUTOMOTIVE HOLDINGS
USA, LLC,

     Third-Party Defendant.
_____


**OPINION AND ORDER GRANTING DEFENDANT MENLO'S MOTION TO DISMISS
CO-DEFENDANT TOWER'S CROSS-CLAIMS**


1

I.      INTRODUCTION AND OVERVIEW

This matter is before the Court on Defendant/Cross-Defendant/Counter-Plaintiff/ Third-Party Plaintiff Menlo Logistics, Inc., d/b/a/ Menlo Worldwide Logistics (Menlo)'s Motion to Dismiss the "Brazil Related" cross-claims of Defendant/Cross-Plaintiff/Counter-Defendant Tower Automotive, LLC (Tower) for lack of subject matter jurisdiction (Doc. #49).  Plaintiff ABX Logistics (USA), Inc., (ABX) joins Menlo in this Motion.  (Doc. #52).  Oral argument was heard on January 20, 2011.

The original action involves a claim by ABX against Tower and Menlo, for their failure to pay under a contract for the shipment of goods from Michigan to Texas.  Either Tower or its Brazilian affiliate, had further contracted with Menlo and/or ABX's Brazilian affiliate to ship these goods from Texas to Brazil, with ABX's Brazilian affiliate to handle the goods within Brazil.

Allegedly, a number of problems developed in connection with the shipment of these goods after they left Texas.  The bulk of Tower's claims against Menlo relate to these post-Texas issues.

Because the Court finds it does not have supplemental jurisdiction over these claims under 28 U.S.C. §1367, or that such claims predominate over ABX's original claim, Menlo's Motion is **GRANTED**.

II.     BACKGROUND

Plaintiff ABX alleges in this action against Defendants Menlo and Tower, that it arranged for and provided transportation services to Tower, through Menlo, and that

2

both Tower and Menlo refuse to pay a delinquent balance of approximately $302,000.

ABX is a New York company with its principal place of business in Atlanta, Georgia.

Tower manufactures automotive component parts and assemblies.  It is a

Delaware company with its principal place of business in Michigan. Tower alleges that it

contracted with Menlo to arrange for the transportation of presses and other machinery

("the Presses") to its affiliate in Brazil, Tower Automotive Do Brazil S/A (Tower Brazil).

Importantly, Tower Brazil is not a party to this suit.

Menlo provides global logistics services for the shipment of goods.  It is a

Delaware company with its principal place of business in Michigan.  Menlo allegedly

subcontracted with ABX to transport the Presses from two locations in Michigan to

Houston, Texas.  ABX is a freight transportation services company.  ABX also has a

Brazilian affiliate, ABX-Penske Air & Sea Logística, Ltda. (ABX Brazil).  ABX Brazil

appears to have been responsible for the transportation of the Presses from Houston,

Texas to their final destinations in Brazil.  Importantly, ABX Brazil is not a party to this

suit.

ABX filed its original complaint (Doc. #1) against Menlo alone; Tower was added

as a defendant in ABX's First Amended Complaint (Doc. #12).  All of the allegations that

ABX makes in its Second Amended Complaint (Doc. #32) relate to the transportation of

the Presses from Michigan to Texas.  ABX alleges breach of contract, breach of

contract implied in fact, and promissory estoppel against Menlo and Tower.  ABX also

alleges breach of contract implied in law/unjust enrichment against Tower alone.

3

The Parties disagree about what contracts exist between which parties, and what contract or contracts apply to this dispute.  ABX claims that the contracts between ABX and Tower are bills of lading for the transportation of the Presses between Michigan and Texas. (Doc. #52, Ex. 1).  Menlo argues that the relevant contract is a Transportation Management Services Agreement ("Services Agreement") between Menlo and Tower Automotive Holdings USA, LLC (Tower Holdings).  (Doc. #60, Ex. A).  Menlo brought Tower Holdings into this suit through a Third Party Complaint. (Doc. #22).  At the hearing, counsel for Menlo claimed that Menlo believed that this Services Agreement was with Tower, since Menlo regularly did business with Tower under the Services Agreement.  Counsel for Menlo also claimed that Menlo only learned that Tower Holdings was separate from Tower, in connection with this litigation.

Tower says that ABX was Menlo's subcontractor, and there was never a contract directly between it and ABX.  Tower's position at the hearing was that while the Services Agreement applied to ordinary domestic transportation, this shipment was an unusual international project for which there was a bidding process.  Thus, Tower claims that purchase order NA9125 (Doc. #53, Ex. 5) and its incorporated terms and conditions, constitute its contract with Menlo.  Tower further claims that this purchase order includes the transportation of the Presses from Michigan to their final destinations in Brazil.

Tower's cross-claims (Doc. #19) allege that Menlo promised to provide full "turnkey" logistics services and failed to do so, causing delays and damages to "Tower and its affiliate." *Id.* at ¶1.  Tower claims that Menlo is contractually obligated to

indemnify "Tower and its affiliated companies" for all damages, costs, and attorneys'

fees that were incurred as a result of the breach of contract, as a result of this litigation,

and as a result of related litigation pending in Brazil ("Brazil Litigation"). *Id.* at ¶1, 11, 22-

23, 39.  In addition to the breach of contract and indemnification claims, Tower seeks

declaratory judgment.

Menlo challenges all of Tower's cross-claims which relate to transportation of the

Presses after they left Texas.  Menlo refers to these particular cross-claims as the

"Brazil Related Claims." (Doc. #49 at 2).  Menlo states that since Tower and Menlo are

non-diverse, and since none of the claims between them is federal, Tower can only

establish this Court's jurisdiction over the cross-claims through the Court's supplemental

jurisdiction.  Menlo argues that this Court does not have the power to exercise

supplemental jurisdiction over the Brazil Related Claims because they do not "form part

of the same case or controversy" as the original action within the meaning of 28 U.S.C.

§1367(a).  Even if such jurisdiction can be established, Menlo argues that per *United*

*Mine Workers of America v. Gibbs,* the Court should decline to exercise supplemental

jurisdiction in the interests of "judicial economy, convenience and fairness to litigants."

*United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).  Menlo claims that

hearing the Brazil Related Claims will involve, *inter alia*, parties, witnesses and evidence

located in Brazil.   Menlo argues that the Court should also decline jurisdiction because

the Brazil Related Claims "substantially predominate" over the claims over which the

Court has original jurisdiction, within the meaning of 28 U.S.C. §1367(c)(2).

III.     STANDARD OF REVIEW

When a defendant moves to dismiss on the grounds of lack of subject matter

jurisdiction, "the plaintiff has the burden of proving jurisdiction in order to survive the

motion."  *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003)(citing *Moir v.*

*Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1986)). "[T]he

court may consider evidence outside the pleadings to resolve factual disputes

concerning jurisdiction, and both parties are free to supplement the record by affidavits."

*Nichols,* 318 F.3d at 677 (citing *Rogers v. Stratton Industries,* 798 F.2d 913, 916 (6th

Cir. 1986)).

In reviewing a motion to dismiss for lack of subject matter jurisdiction, "no

presumptive truth attaches to plaintiff's allegations, and existence of disputed material

facts will not preclude the trial court from evaluating for itself the merits of jurisdictional

claims."  *RMI Titanium Company v. Westinghouse Electric Corporation,* 78 F.3d 1125,

1134 (6th Cir. 1997)(citations omitted).  Furthermore, the court should dismiss a claim

or claims at any time if it finds a lack of subject matter jurisdiction. Fed. R. Civ. P.

12(h)(3).  *See also, e.g., Arbaugh v. Y & H Corporation,* 546 U.S. 500, 506-507 (2006).

IV.     APPLICABLE LAW AND ANALYSIS

A.     Case or Controversy under Section 1367(a)

In *United Mine Workers of America v. Gibbs*, the Supreme Court granted federal

courts jurisdiction over certain state law claims, on the condition that these state claims

and the claims over which a federal court has original jurisdiction "must derive from a

common nucleus of operative fact." *Gibbs,* 383 U.S. at 725.  This decision also

6

authorized district courts to exercise discretion, stating that the justification for granting

this jurisdiction "lies in considerations of judicial economy, convenience and fairness to

litigants." *Id* at 726.

Gibbs was codified in 28 U.S.C. §1367, which states, in part, that district courts

have the power to exercise supplemental jurisdiction "over all other claims that are so

related to claims in the action within such original jurisdiction that they form part of the

same case or controversy." 28 U.S.C. §1367(a).  Claims can be said to form the same

case or controversy as the original action when they "revolve around the same fact

pattern." *Blakely v. U.S.,* 276 F.3d 853, 862 (6th Cir. 2002)(citing *Gibbs*, 383 U.S. at

726)(additional citations omitted).  A court may exercise supplemental jurisdiction over

claims that are so "logically entwined in the sense that the decision in one suit would

necessarily decide the other by operation of collateral estoppel or otherwise." *Hartford*

*Accident and Indemnity Company v. Sullivan,* 846 F.2d 377, 380 (2nd Cir. 1988).

The Court agrees with Tower that it was brought into this suit unwillingly and, for

that reason, it should be allowed to assert transactionally related claims.  However,

Tower's cross-claims go well beyond claims that revolve around the same fact pattern

as ABX's original claim.  Tower claims that Menlo breached their contract in the

following ways:

A.   By severely miscalculating the inland freight costs for transporting the
Presses in the United States;

B.   By failing to work effectively with the ocean freight provider, Intermarine, to
ensure arrival of the Presses as scheduled;

C.   By failing to secure sufficient warehouse space in Brazil prior to arrival of
the Presses in order to avoid exorbitant fees;

D.  By mismanaging the importation process, leading to an extraordinary special investigation process not typical for importations of this nature;

E.  By holding the Presses on trailers at a bonded warehouse for approximately 65 days, resulting in exorbitant costs not included in Menlo's original quotation or in the parties' Contract;

F.  By failing to include multiple significant and obvious cost elements in Menlo's original quotation and in the parties' Contract;

G.  By filing improper Harmonized Tariff Codes in the AES export filing that was made on Tower's behalf;

H.  By failing to provide its services in a satisfactory, competent and workmanlike manner; and

I.  By failing to provide *complete* logistics management services for the shipment of the Presses.

Doc. #19 at ¶12 (emphasis in original).

A number of these claims pertain solely to the transportation of the Presses from Texas to Brazil, and problems that allegedly developed in Brazil. Only three relate to the entire Press move. And, the first claim is the only one that pertains solely to the movement of the Presses that ABX was involved in.

At the hearing, counsel for Tower conceded that ABX's contracted work went reasonably well. And, Tower conceded that the bulk of its cross-claims concerns events which occurred after ABX was no longer involved. All of Tower's cross-claims are against Menlo; none alleges any involvement with ABX.

Based on the allegations and Tower's concessions, the Court finds that the claims are not "logically intertwined" such that the Court would need to resolve the cross-claims, or even reach most of the issues and facts they raise, in order to adjudicate ABX's original claims. *Hartford Accident and Indemnity Company,* 846 F.2d at 380. The respective allegations do not revolve around a "common nucleus of

8

operative fact." *Gibbs*, 383 U.S. at 725.  The overly broad cross-claims are not so related to allegations in the Second Amended Complaint that they could be said to "form part of the same case or controversy."  28 U.S.C. §1367(a).  The Court finds that it cannot exercise supplemental jurisdiction over the entirety of Tower's cross-claims, under Section 1367(a).

### B.    Substantially Predominates under Section 1367(c)

Even if the Court found it could exercise supplemental jurisdiction, it still has the discretion to decline to do so if:

(1)    the claim raises novel or complex issues of State law,

(2)    the claim substantially predominates over the claim or claims over which the court has original jurisdiction,

(3)    the district court has dismissed all claims over which it has original jurisdiction, or

(4)    in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. §1367(c).

The language of Section 1367(c)(2) comes directly from *Gibbs.*  There, the Supreme Court noted that jurisdiction should be declined "if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought." *Gibbs,* 383 U.S. at 726. Although Section 1367(c) sets out specific circumstances under which a court may exercise its discretion, it has been widely recognized that such discretion is still informed by "the underlying objective of most sensibly accommodating the values of economy, convenience, fairness and comity." *Executive Software N. Am., Inc., v. U.S. Dist. Court,*

9

24 F.3d 1545, 1557 (9th Cir. 1994)(citing *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988)(additional citations and internal quotations omitted)). *See also Blakely*, 276 F.3d at 863 (citations omitted).

The single claim in Tower's cross-claims which directly pertains to the part of the transportation that involved ABX, is dwarfed by the rest of the claims and what hearing them would involve.  The cross-claims raise a variety of new issues, the adjudication of which would require additional witnesses and a significant amount of evidence located in Brazil.  The cross-claims also introduce new parties, ABX Brazil and Tower Brazil, whose relationships and arrangements with the other parties are unclear.  ABX's original claims revolve around an alleged breach of contract for which ABX seeks approximately $302,000.  Tower's cross-claims seek both indemnification and declaratory relief, possibly for "significantly more" than the $1,541,681 that Tower Brazil has already paid ABX Brazil. (Doc. #19, ¶18).  Thus Tower's cross-claims substantially predominate in terms of the scope of proof, issues raised and remedy sought. *Gibbs,* 383 U.S. at 726-727.  Hearing these broad cross-claims would not serve "economy, convenience, fairness and comity;" they would unduly complicate and prolong this case. *Executive Software N. Am. Inc.,* 24 F.3d at 1557*.*

Moreover, the Court reads comity considerations broadly, and believes it is relevant to the related foreign action in Brazil.  Tower's cross-claims seek indemnification and declaratory relief for the litigation pending in Brazil.  The Court doesn't know and the parties could not say, what effect a declaratory judgment issued here, would have on the Brazil Litigation.

In order for this Court's declaratory judgment to have meaning, the Court would need to be fully apprised of the issues, claims and parties involved in the Brazil Litigation. The Court has little knowledge of those matters.

For all of these reasons, the Court finds that Tower's cross-claims substantially predominate over ABX's original claims.

## IV.    CONCLUSION

Menlo's Motion to Dismiss is **GRANTED**.

Tower's cross-claims are **DISMISSED** without prejudice. Nothing prohibits Tower from refiling cross-claims that relate to the transportation of the Presses between locations in Michigan and Houston, Texas.

**IT IS SO ORDERED.**


s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  January 28, 2011

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on January 28, 2011.

s/Linda Vertriest
Deputy Clerk